IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHERI B.,[1]

    Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.
_____

Case No. 2:19-cv-00637-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Sheri B. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title XVI Supplemental Security Income. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND

Born in 1967, plaintiff alleges disability beginning January 1, 2013, due to chronic pain, migraines, chronic obstructive pulmonary disease, depression, anxiety, hypertension, and high cholesterol. Tr. 159, 175. On October 4, 2017, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 29-64. On March 7, 2018, the ALJ issued a decision finding plaintiff not disabled. Tr. 13-23. After the Appeals Council denied her timely request for review, plaintiff filed a complaint in this Court. Tr. 1-5.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the April 20, 2015, application date. Tr. 15. At step two, the ALJ determined that plaintiff's "degenerative disc disease and chronic obstructive pulmonary disease" were medically determinable and severe. Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 17.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R § 416.967(b) except:

> she can occasionally reach overhead bilaterally. Further, she requires the ability to alternate between sitting and standing at will while remaining on task. She can tolerate occasional exposure to fumes, odors, dust, gases, and poor ventilation.

Tr. 18.

Page 2 – OPINION AND ORDER

At step four, the ALJ determined plaintiff had no past relevant work. Tr. 22. At step five, the ALJ concluded, based on the VE's testimony, that plaintiff could perform a significant number of jobs in the national economy despite her impairments, such as ticket seller, circuit board pre-assembler, and touch-up screener. Tr. 22.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) rejecting the medical opinion of treating provider Sarah Serrano, M.D.; and (2) rendering an invalid step five finding.

**I.    Medical Opinion Evidence**

Plaintiff contends the ALJ "failed to provide legally sufficient reasons to reject" Dr. Serrano's opinion. Pl.'s Opening Br. 8 (doc. 13). At the time of plaintiff's application, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, the opinions of treating doctors are accorded greater weight than those of examining doctors, and the opinions of examining doctors are entitled to greater weight than those of a non-examining doctors. Id. To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons, supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons, supported by substantial evidence. Id.

Plaintiff established care with Dr. Serrano in April 2017. Tr. 1180-89, 1345. In October 2017, Dr. Serrano completed a questionnaire at the request of plaintiff's counsel. Tr. 1345-47. Dr. Serrano indicated that plaintiff's primary symptoms were widespread and multifactorial pain, although plaintiff also suffered from "vaginal prolapse, migraine headache, anxiety and

depression." Tr. 1345. In the corresponding "Residual Physical Functional Capacity Form," Dr. Serrano checked boxes reflecting that plaintiff could: occasionally lift/carry less than ten pounds; stand and/or walk for 20 minutes at one time and three hours total; sit for 20 minutes at one time and five hours total; never climb, balance, stoop, bend, kneel, crouch, crawl, or reach overhead; and frequently reach at shoulder height, handle, finger, and feel. Tr. 1346. Finally, Dr. Serrano opined plaintiff's concentration and attention would be impaired 90% of the time even with simple work tasks, and that plaintiff would miss 16 hours or more per month from a simple, routine sedentary job due to her impairments. Tr. 1347.

The ALJ afforded "little weight" to Dr. Serrano's assessment because "the doctor had seen [plaintiff] only three times at the time of her opinion." Tr. 21. In addition, the ALJ concluded Dr. Serrano's opinion was "not consistent with her own treatment notes and other medical records." Id.

Initially, although the ALJ may consider the nature and extent of plaintiff's relationship with Dr. Serrano, "the presence of a limited treatment relationship cannot alone constitute a legitimate reason for rejecting a treating source's opinion." Daily v. Berryhill, 2018 WL 746397, *10 (E.D. Cal. Feb. 7, 2018) (collecting cases); see also Johnson v. Comm'r of Soc. Sec., 2017 WL 4181084, *6 n.6 (E.D. Cal. Sept. 21, 2017) ("[a] treating relationship can be established [with a] medical source who has treated or evaluated [the claimant] only a few times") (citation and internal quotations omitted).

Turning to the ALJ's second rationale, contradiction between a medical provider's opinion and her treatment notes constitutes a legally sufficient reason to reject that opinion. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009). Similarly, inconsistency with the record is a proper basis to reject a medical provider's opinion. Tommasetti v. Astrue, 533 F.3d

1035, 1041 (9th Cir. 2008). Here, however, substantial evidence does not support the ALJ's decision.

While limited,[2] Dr. Serrano's chart notes support, rather than detract from, her opinion. During plaintiff's first appointment, Dr. Serrano acknowledged that plaintiff's neurologist, Mark Belza, M.D., was planning a second back surgery to treat her lumbar degenerative disc disease. Tr. 1185-89; see also Tr. 785, 795, 842-43 (objective imaging studies from late 2015 and early 2016 showing mild-to-moderate degenerative changes in plaintiff's cervical and lumbar spine); Wright v. Berryhill, 2017 WL 3399855, *6-7 (D. Or. Aug. 7, 2017) (reversing the ALJ's rejection of a treating provider's opinion regarding the claimant's limitations from severe back pain where imaging studies in the record "revealed mild to moderate spinal cord compression and stenosis"). During plaintiff's second appointment, Dr. Serrano performed a detailed exam of plaintiff's lower back, which revealed "flared pain" and "leg weakness on the right and reduced sensation," in order to place a proper referral to Dr. Belza. Tr. 1180-84. Moreover, as plaintiff's primary care physician, Dr. Serrano was forwarded plaintiff's pain management records with treating source Nancy Maloney, M.D., which showed chronic and significant back pain "related to cervical and lumbar spondylosis." Tr. 1162-66.

Further, contrary to the ALJ's assertion, an independent review of the record reveals no contemporaneous medical evidence that contravenes Dr. Serrano's report. Compare Tr. 21 (ALJ citing two isolated records from Dr. Maloney, which allegedly showed "adequate pain control"), with Tr. 1155-66 (Dr. Maloney's chart notes from October 2015 through June 2017 showing

---

[2] While the ALJ referred to three sets of treatment notes from Dr. Serrano, the record before the Court contains only two, both from April 2017. Compare Tr. 21, with Tr. 1180-89. Nevertheless, as discussed herein, the record indicates that Dr. Serrano had access to at least some of plaintiff's other medical records and was aware of her relevant medical history.

Page 5 – OPINION AND ORDER

"intractable" cervical and lumbar pain; in regard to the two specific chart notes cited by the ALJ, plaintiff reported "7/10" pain levels, headache and nausea associated with pain, and poor sleep due to pain, as well as the possible need for a second back surgery with Dr. Belza); see also Tr. 1116 (plaintiff presenting to the emergency room in September 2016 for treatment of "[a]cute . . . chronic atraumatic low back pain), 1269-70 (plaintiff seeking treatment from Dr. Belza in December 2016 for "ongoing low back pain radiating into bilateral lower extremities"; during this appointment plaintiff was "in acute distress secondary to pain" and displayed "positive SI testing with gaeslen, faber, distraction, compression"; "poor [movement], short steps"; and "poor ROM in all directions").

In sum, the ALJ committed harmful legal error in evaluating Dr. Serrano's opinion, such that remand is warranted. See Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (only mistakes that are "non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

**II.     Step Five Finding**

Plaintiff contends that the ALJ's step five finding was deficient in two respects. First, plaintiff asserts that the ALJ erred at step five by failing to apply the Medical-Vocational Guidelines ("Grids") to find her disabled as of her 50th birthday in light of the RFC's sit/stand option, which "significantly reduced the light occupational base" and "essentially restricted [her] to a sedentary occupational base." Pl.'s Opening Br. 6-7 (doc. 13). Second, plaintiff argues that the three representative occupations identified by the VE totaled only "7,500 jobs nationally," which does "not constitute a significant number of jobs." Id. at 5.

A.     **Erosion of Light Occupation Base**

There are two ways that the Commissioner can meet her step five burden: by applying the Grids or taking the testimony of a VE. Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988). The ALJ must only rely on the Grids where the claimant possesses "substantially uniform levels of impairment" in relation to the four vocational factors – i.e., age, work experience, education, and physical ability. Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002) (citation omitted). However, the Grids are inapplicable when they "do not adequately take into account a claimant's abilities and limitations." Id.; SSR 83-10, available at 1983 WL 31251. In other words, where "a claimant's exertional limitation falls between two grid rules, the ALJ fulfills his obligation to determine the claimant's occupational base by consulting a vocational expert." Thomas, 278 F.3d at 960 (citations omitted).

Here, in relevant part, the ALJ found that plaintiff could perform the lifting and carrying, and standing and walking requirements of light work, but needed a bilateral overhead reaching restriction and sit/stand option. Tr. 18; 20 C.F.R. § 416.967(a)-(b). As a result, it would have been improper for the ALJ to exclusively employ the Grids because plaintiff's RFC did not directly correspond to either the light or sedentary exertion rule. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201 & 202 (relevant Grid rules); see also Tr. 22 (ALJ recognizing that plaintiff's "ability to perform all or substantially all of the requirements of [light work] has been impeded by additional limitations [such that a VE was necessary to] determine the extent to which these limitations erode the unskilled light occupational base").

Indeed, even the Social Security Ruling that plaintiff predominantly relies on – SSR 83-12 – specifies that where, as here, the claimant's "exertional RFC does not coincide with the exertional criteria of any one of the external ranges," the ALJ must "consider the extent of any

erosion of the occupational base and assess its significance" by "consult[ing] a vocational resource." SSR 83-12, available at 1983 WL 31253, *1-3; see also id. at *4 ("[i]n cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base"). As such, the ALJ did not commit legal error by utilizing a VE or otherwise failing to find that plaintiff was disabled as of her 50th birthday under the Grids.

### B.    Incidence of Jobs Identified by the VE

Also at step five, the Commissioner bears the burden of demonstrating that the claimant is capable of performing other work that exists in "significant numbers" in the national or local economy. Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012). Although the Ninth Circuit has never set out a bright line rule for what constitutes a significant number, it has found 25,000 national jobs to be a "close call" but nonetheless sufficient. Gutierrez v. Comm'r, Soc. Sec., 740 F.3d 519, 528-29 (9th Cir. 2014).

At the hearing, the VE identified three representative occupations that the ALJ relied on at step five: ticket seller, DOT § 211.467-030, light, unskilled, approximately 5,000 jobs nationally; circuit board pre-assembler, DOT § 726.687-038, light, unskilled, approximately 1,000 jobs nationally; and touch-up screener, DOT § 726.684-110, sedentary, unskilled, approximately 1,500 jobs nationally. Tr. 22, 55-57. Collectively, these representative occupations constitute 7,500 jobs in the national economy (the VE did not specify the local or regional incidence). Id.

Accordingly, the Commissioner failed to meet his step five burden regarding the significance of other work in the national economy. See Moey C. v. Comm'r, Soc. Sec. Admin., 2020 WL 39965, *3 (D. Or. Jan. 3, 2020) ("14,670 jobs in the national economy – only slightly more than one-half of 25,000 – does not constitute a significant number of jobs") (collecting cases); see also Day v. Colvin, 2015 WL 5961647, *2 (N.D. Cal. Oct. 13, 2015) (two jobs totaling 6,700

positions in the national economy did not meet the significance standard, explaining that "significant numbers tend to be in the tens of thousands"); Lisa L. v. Comm'r of Soc. Sec., 2018 WL 6334996, *4 (D. Or. Dec. 5, 2018) (denoting that the Ninth Circuit "has yet to endorse a number below 25,000 with respect to the significant number standard").[3] The ALJ's step five finding is therefore reversed.

### III.   Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the court's discretion. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The court nevertheless may not award benefits punitively. Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As addressed herein, the ALJ erred in regard to Dr. Serrano's opinion and step five. The record is nonetheless ambiguous regarding the extent of plaintiff's impairments. On the one hand, plaintiff suffers from "progressive, moderate" degenerative disc disease in her cervical and lumbar spine, despite undergoing corrective surgery in her neck in 2015, and has consistently reported

---

[3] The Commissioner argues that the Court must "defer . . . to an ALJ's finding that a particular number of jobs is significant," unless the ALJ otherwise erred in relying on one or more jobs at step five that was inconsistent with the claimant's RFC. Def.'s Resp. Br. 3-4 (doc. 14). However, the Commissioner has not cited to, and the Court is not aware of, any authority that supports this proposition. In any event, because the ALJ erred in regard to Dr. Serrano's opinion, the sufficiency of the incidence of the particular jobs identified by the VE is likely moot.

Page 9 – OPINION AND ORDER

pain related to these impairments. See, e.g., Tr. 634, 785, 795, 842-43, 1116, 1151-66, 1180-89, 1200-01, 1269-70; see also Dahl v. Comm'r of Soc. Sec., 2015 WL 5772060, *5 (D. Or. Sept. 30, 2015) (even mild degenerative disc disease can be disabling) (collecting cases).

On the other hand, the ALJ found that plaintiff's subjective symptoms testimony was not consistent with the medical and other evidence of record, and plaintiff does not challenge that finding on appeal. Tr. 18-20; see generally Pl.'s Opening Br. (doc. 13). Furthermore, when questioned at the hearing what prevented her from performing "a job where [she] was primarily seated, but . . . could stand once in a while [as] needed," plaintiff cited solely her dissociate identity disorder. Tr. 52. Yet the ALJ did not identify any medically determinable mental impairments at step two (except for anxiety, which was medically determinable but non-severe) and plaintiff likewise does not challenge this issue on appeal. Tr. 15-17; see generally Pl.'s Opening Br. (doc. 13).

Although there is a dearth of evidence regarding plaintiff's daily activities in the record, the Court notes that during the adjudication period, plaintiff was single-handedly raising her two youngest children, who were nine and eleven years old as of the alleged onset date, and there is also evidence that plaintiff adopted or fostered other children during this time period. Tr. 36-37, 1164, 1186, 1229-30, 1322. Finally, as the Commissioner denotes, "[t]he extent to which . . . Dr. Serrano [herself completed the opinion form] is unclear," given that "the handwriting on the first page is different from that on the following pages" and there are a "number of misspellings on the second two pages." Def.'s Resp. Br. 6 n.3 (doc. 14) (citing Tr. 1345-47).

In light of these ambiguities in the record, the Court declines to credit the medical opinion of Dr. Serrano as true and instead remands this case for further proceedings. See Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) ("[w]hen an ALJ's denial of benefits is not supported by the

record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (citation and internal quotations omitted). Upon remand, the ALJ must reconsider the medical evidence and the extent of plaintiff's daily activities, and reformulate plaintiff's RFC and obtain additional VE testimony, if necessary.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 27th day of April, 2020.

_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge